UNITED STATES DISTRICT COURT       WESTERN DISTRICT OF NORTH CAROLINA

FILE NO:  17 CV

| | |
|---|---|
| SOURCE.AUCTION, LLC AND JEREMY LECLAIR,<br><br>    *Plaintiffs,*<br><br>*vs*.<br><br>LESLIE FARKAS AND VALARIA DEVINE,<br>    *Defendants.* | **COMPLAINT AND MOTION FOR INJUNCTIVE RELIEF** |

## COMPLAINT

Plaintiffs SOURCE.auction LLC, and Jeremy LeClair, by and through their undersigned counsel, for a Complaint and Preliminary Injunction against Defendants, allege as follows:

## PARTIES

1. Plaintiff SOURCE.auction, LLC is a limited liability company incorporated under the laws of New Mexico. The principal place of business is located in Davidson, North Carolina is subject to the jurisdiction and venue of this Court.

2. Plaintiff Jeremy LeClair is a citizen and resident of Cornelius, North Carolina. LeClair is subject to the jurisdiction and venue of this Court.

3. Defendant Leslie Farkas is a citizen and resident of Naples, Florida.

4. Defendant Valaria Devine is a citizen and resident of Naples, Florida.

PLAINTIFFS believe, and on such information and belief allege, that each of the aforementioned DEFENDANTS published false and defamatory statements concerning PLAINTIFFS on websites including, but not limited to, public websites and various forms of social media.

Jurisdiction and Venue

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. Sec. 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. For diversity jurisdiction purposes, the citizenship of a corporation is the state of incorporation and the state of principal place of business. This matter is between citizen of North Carolina and duly registered limited liability company in North Carolina (Plaintiffs) and citizens of Florida (Defendants).

6. This Court has personal jurisdiction over Defendants because they have engaged in tortious behavior in the state of North Carolina and their conduct directly affects the business residing in the Western District of North Carolina.

7. Venue is proper pursuant to 28 U.S.C. Sec. 1391 because a substantial part of the events giving rises to the claims in this action occurred within the North Carolina business market and/or affect North Carolina residents.

FACTUAL ALLEGATIONS

8. The Luxury Real Estate Auction Industry is niche marketplace with only 18 "premiere" active Luxury Real Estate Auction Houses in the US and Canada.

9. A "Luxury Real Estate Auction" is defined in the industry as a high-end, or premier estate or property, that is not in distress or foreclosure, with a value exceeding $1-million dollars, being marketing to be sold by an auction platform to the highest bidder for an all-cash amount, by an Luxury Real Estate Auction Company representing the estate for sale.

10. Upon information and belief that Defendants Valaria DeVine (hereinafter referred to a "DeVine") and Leslie Farkas (hereinafter referred to as "Farkas") defamed the Plaintiffs Jeremy LeClair and his company, SOURCE.auction on various websites including but not limited to: www.GrandEstatesAuction.com, facebook.com, twitter.com, and LinkedIn.com, and further being disseminated through search engine optimization on the world-wide-web and its public search engines including Google, Bing, and Yahoo.

11. The sole purpose of these statements was to injure the reputation of the Plaintiffs. The malicious statements were committed with resolute intent to damage the reputation of LeClair and SOURCE.auction, LLC within the small niche Luxury Real Estate Auction marketplace.

12. The Defendants spent marketing dollars to promote and increase the normal promotional reach of websites to excessive promotion, of the Defendants defamatory statements.

13. The defamatory statements were posted on social media posts using video and pictures.

14. The messages and posts contained negative innuendos about LeClair and his company SOURCE.auction, LLC that damaged the reputation of both SOURCE.auction and LeClair personally.

15. Upon information and belief, the reckless defamation tactics of the Defendants DeVine and Farkas demonstrate their culpable mental state, which extends to potentially harming their own company brand, by omitting information on their company branded social media profiles, and replacing the information with specific personnel information about the Plaintiff LeClaire and company names and information related to the Plaintiffs. These postings were done with the intent to deceive the public, Google, Bing and Yahoo, to drive further search traffic to the libelous statements.

16. The defamatory actions by the Defendants included multiple actions to increase the search engine optimization (SEO) of www.GrandEstatesAuction.com, LinkedIn, and facebook. This expenditure on SEO would boost the ranking on the world-wide-web of keywords the Defendant listed to be used. When the public uses the search phrasing "Jeremy LeClair", "Jeremy Wyatt LeClair", and/or "SOURCE.auction", for niche marketplace public research, or business executives searching or further information on the Plaintiffs the public would be re-directed to the Defendants' personal websites and social media, in order to further disseminate the Defendants' defamatory statements against the Plaintiffs.

17. Upon information and belief, DeVine has been operating in the niche Luxury Real Estate Auction Industry marketplace since 1999, and Farkas has close to a decade of experience and knowledge of the niche marketplace. The Defendants have the knowledge that the action of defaming an individual or company in this niche marketplace has a

tremendously negative impact on the individual or company being defamed.

18. Defendants may have engaged in similar behavior in 2012-2013 against a competitor, Concierge Auctions.

19. The actions against Concierge Auctions by the Defendants, demonstrates the Defendants are knowledgeable of the effect of harmful words and tactics. The Defendants in the the case at bar used the statement to injure the reputation of the Plaintiffs by exposing Plaintiffs to hatred, contempt or ridicule.

20. The Defendants statements have exposed Plaintiffs to hatred, contempt and ridicule on the Defendants' Facebook posts, using paid advertising, and pinning (to the top) defamatory postings.

21. In reaction to the postings by the Defendant, third parties have posted responses on the websites and media such as; "Cringe", "MSNBC to catch a predator", "Looks like a gangster", and "Scam artist got busted."

22. The Defendants named the past and present associates of the Plaintiffs, specifically (5) employees of the Plaintiff LeClair, on the Defendants' company website www.GrandEstateAuction.com, with specific innuendos claiming the employees participated in a theft of the Defendants property.

23. LeClair was ultimately forced to close a prior business and layoff employees, as it was found that customers did not wish to do business, or even be involved with a company or executive that was "accused" of the multiple malicious statements disseminated by the Defendants.

24. LeClair created a Luxury Real Estate Auctions Multiple Listing Service called SOURCE.auction, similar toa small version of Zillow™, but specifically only listing

Luxury Real Estate Auction around the globe.

25. SOURCE.auction is not a competitor of any Luxury Real Estate Auction company, but rather an "advocate for the Luxury Real Estate Auction Industry" in order to help Luxury Real Estate Auction Companies increase their luxury listing exposure to buyers via online search parameters and online marketing techniques.

26. The specific defamation and innuendos of "Buyers Beware" on the Defendants website [www.GrandEstatesAuction.com](www.GrandEstatesAuction.com), and the other websites, followed by the "threat of legal action" from Defendants against any person or company doing business with SOURCE.auction has been vastly damaging to the reputation of the Plaintiffs.

27. The Defendants posted statements of "possible" wrong doing by the Plaintiffs to the targeted niche Luxury Real Estate Auction industry in order to generate apprehension of the Plaintiffs' business.

28. The Defendants threatened future litigation against all companies on Defendants' website that do business with SOURCE.auction, this has generated trepidation in working with Plaintiffs.

29. The Defendants have acted maliciously and with reckless disregards for the truth and insist on hurting the Plaintiffs with their continued postings on the Internet.

CAUSES OF ACTION

I.   LIBEL

1. All preceding paragraphs are re-alleged and incorporated herein by reference as if fully set forth.

2. Article I, § 14, of the N.C. state constitution reads, "Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse."

3. The defendants caused injury to the plaintiffs by making false, defamatory statements of or concerning the plaintiff, which were published to and read by a third person.

4. These statements were knowingly and willfully published at the direction of the Defendants.

5. At the time of the publication, the Defendants either knew the statements were false or failed to exercise ordinary care in order to determine whether the statement was false

6. These statements have injured the Plaintiffs in an amount that exceeds $75,000.00.

## II. LIBEL PER SE

7. All preceding paragraphs are re-alleged and incorporated herein by reference as if fully set forth.

8. The Defendants statements have impeached the Plaintiffs in their trade and professions.

9. The Defendants have caused injury to the Plaintiffs by the defamatory statements which were published to and read by a third person.

10. These statements were knowingly and willfully published at the direction of the Defendants.

11. At the time of the publication, the Defendants either knew the statements were false or

failed to exercise ordinary care in order to determine whether the statements were false

12. These statements have injured the Plaintiffs in an amount that exceeds $75,000.00.

## III. TORTIOUS INTERFERENCE WITH A CONTRACT

13. All preceding paragraphs are re-alleged and incorporated herein by reference as if fully set forth.

14. The Defendants have engaged in conduct that prevents the plaintiffs from entering into a contract with a third party.

15. The Defendants' unlawful interference with the freedom of contract has consisted of maliciously procuring breach of a contract with the Plaintiffs, and by preventing the making of a contract.

16. The Defendants actions were not a legitimate exercise of the Defendants own rights, but were done with design to injure the Plaintiffs.

17. The Defendants actions were done without justification.

18. These actions of the Defendants have damaged the Plaintiffs in excess of $75,000.00.

## Motion For Injunctive Relief Pursuant to Rule 65

1. All preceding paragraphs are re-alleged and incorporated herein by reference as if fully set forth.

2. The Defendants have defamed the Plaintiffs

3. There is a substantial likelihood that the Plaintiff will suffer injury and damage as has already occurred by Defendants' breach of their duties to the Plaintiff and that the Plaintiff

will continue to suffer substantial injury and damage during the pendency of this action if Defendants are not ordered to remove defamatory statements from the world-wide-web.

4. There is an overwhelming substantial likelihood that the Plaintiffs will prevail on the merits of their claims.

5. Immediate, substantial and irreparable harm will result to the Plaintiffs unless the court enjoins Defendants from posting or maintaining defamatory statements against the Plaintiffs.

6. The Plaintiffs have no adequate remedy at law and the Defendants have shown no regard in their conduct for the rights of the Plaintiffs.

7. The public interest will be served by the issuance of a preliminary and permanent injunctive relief in this action. Without such relief, Defendants will continue to injure the ongoing business and goodwill of the Plaintiffs.

8. All other requirements for preliminary and permanent injunctive relief are met herein.

WHEREFORE, Plaintiffs respectfully prays the court will enter judgment in favor of the Plaintiffs and against the Defendants and award the following relief:

A. Preliminary injunctive relief prohibiting the Defendants from defaming the Plaintiffs.

B. A permanent injunction prohibiting the Defendants from posting to the inter-net defamatory statements regarding the Plaintiffs;

C. Damages in excess of $75,000.00 and in such amount as is necessary to compensate the Plaintiffs for the Libel, Libel Per Se and Tortious Interference of the Defendants;

D. Damages including lost profits, compensatory, punitive and treble damages and other actual and prospective damages against Defendants in excess of $75,000.00 for their tortious conduct;

E. Pre and post-judgment interest on any awards;

F. Reasonable attorney's fees and expenses;

G. The costs of this action;

H. A trial by jury on all issues so triable; and

I. Such other and further relief as the Court deems just and equitable.

This the 4th day of April, 2017.

        The John Snyder Law Firm

        /s/John C. Snyder III
        John C. Snyder III
        Attorney for Plaintiffs
        NC Bar # 28086
        8924 Blakeney Professional Drive
        Charlotte, NC  28277
        Telephone: 704-839-6288
        John@attorneyjohnsnyder.com